## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., WARNER MUSIC GROUP CORP., and ZOMBA RECORDING LLC, <br><br> *Plaintiffs,* <br><br> v. <br><br> CESAR CHAVEZ, and DOES 1-10, D/B/A GROOVESHARK.IM, <br><br> *Defendants.* | CIVIL ACTION NO. _____ <br><br> **COMPLAINT** <br><br> **[FILED UNDER SEAL PURSUANT TO 15 U.S.C. §1116]** |

Plaintiffs, by and through their counsel, on personal knowledge as to their own actions and on information and belief as to the actions, capabilities and motivation of others, hereby allege the following:

### INTRODUCTION

1.      Plaintiffs are record companies that produce, manufacture, distribute, sell and license the great majority of all legitimate commercial sound recordings in this country.  This case arises from the egregious and bad faith counterfeiting, cybersquatting and copyright infringement by rogue Internet website operators who have launched a "copycat" of the well-known "Grooveshark" music streaming service, accessible at their website grooveshark.im (the "Counterfeit Service").  Like another "copycat" Grooveshark website that Plaintiffs recently shuttered through a separate action in this Court (*Arista Records LLC v. Tkach*, 15-cv-3701-AJN, Dkt. No. 94 (S.D.N.Y. Dec. 11, 2015) (Default Judgment and Permanent Injunction Order)),

ORIGINAL

Defendants operate their Counterfeit Service to sow – and profit from – confusion in the marketplace as to whether the site is a rebirth of the original "Grooveshark" service.

2.   Escape Media Group, Inc. ("Escape"), is the former owner and operator of the eponymous music streaming service known as "Grooveshark," previously accessible at the website grooveshark.com.  From at least as early as 2007 until April 30, 2015, Escape's Grooveshark service offered visitors the ability to stream music directly from the Grooveshark website to their personal computers or other compatible devices.  The Grooveshark service was extremely popular, boasting as many as 35 million monthly users at its peak.  For the vast majority of music that it provided through the Grooveshark service, however, Escape did not have licenses from Plaintiffs and other copyright owners.

3.   Plaintiffs filed and prosecuted a series of high-profile copyright infringement actions against Escape based on various aspects of its operation of the Grooveshark service. *UMG Recordings, Inc. Escape Media Group, Inc.*, No. 100152/10, Complaint (N.Y. Sup. Ct. Jan. 6, 2010); *Arista Music, et al. v. Escape Media Group, Inc.* ("*Arista Music*"), No. 11 Civ. 8407, Complaint, Dkt. No. 3 (S.D.N.Y. Dec. 18, 2011); *Capitol Records, LLC, d/b/a EMI Music North America* ("*EMI*"), No. 12-CV-6646 (AJN), Complaint, Dkt. No. 1 (S.D.N.Y. Aug. 30, 2012).  The courts in *Arista Music* and *EMI* (both in this District) granted summary judgment in favor of Plaintiffs against Escape based on its infringement of Plaintiffs' copyrighted works. *Arista Music*, No. 11 Civ. 8407 (TPG), 2014 WL 5089743 (Sept. 29, 2014); *EMI*, No. 12-CV-6646 (AJN), 2015 WL 1402049 (Mar. 25, 2015).

4.   On April 30, 2015, on the eve of a statutory damages trial in the *Arista Music* action, Escape suspended its operation of the Grooveshark service and assigned its intellectual property, including, but not limited to, the word mark "Grooveshark" and the shark fin logo design featured on the Grooveshark.com website (hereinafter "Grooveshark Marks") to Plaintiff

UMG Recordings, Inc. ("UMG") as part of a settlement with all Plaintiffs.  On that same date, Escape and Plaintiffs submitted consent judgments in all three cases providing for permanent injunctive relief against Escape and, in two of the cases, awarding Plaintiffs monetary damages of $50 million dollars (in the *Arista Music* case) and $25 million dollars (in the *EMI* case).  The courts entered all three judgments shortly thereafter.  *Arista Music*, No. 11 Civ. 8407 (TPG), Dkt. No. 175 (May 1, 2015); *UMG v. Escape*, No. 100152/10, Dkt. No. 269 (May 4, 2015); *EMI*, No. 12-CV-6646 (AJN), Dkt. No. 108 (May 5, 2015).

5.     Plaintiffs' actions against Escape in connection with the Grooveshark service received widespread media coverage in various national news outlets, including *The New York Times*, *The Washington Post*, and *The Los Angeles Times*.  *See e.g.,* Exhibit A.

6.     Within days following the entry of the consent judgments, a "copycat" website claiming to be the rebirth of the real Grooveshark appeared at the web address "grooveshark.io." Plaintiffs filed an action in this Court against the operators of that site, which resulted in a default judgment and permanent injunction against the defendants in that case.  *Arista Records LLC v. Tkach*, 15-cv-3701-AJN, Dkt. No. 94 (S.D.N.Y. Dec. 11, 2015) (Default Judgment and Permanent Injunction Order).  As a result of that action, the grooveshark.io website ceased to operate.  News of the shutdown of the grooveshark.io website was also highly publicized.  *See* Exhibit B.

7.     Less than two weeks ago, media reports began to appear announcing the rise of yet another Grooveshark copycat – the Counterfeit Service.  As described in these reports, the Counterfeit Service is a "fast-rising clone" of the real Grooveshark service that is "now breaking into the top 30,000 sites" visited by United States users.  *See* Exhibit C (Digital Music News report, January 25, 2016).  Like the now-shuttered grooveshark.io, Defendants' Counterfeit Service is a blatant clone of the original Grooveshark website and service that is designed and

intended to mislead and confuse consumers regarding the source, sponsorship and affiliation of

the service.  The Counterfeit Service features counterfeit replicas of the Grooveshark Marks as

well as identical graphical elements taken from the Grooveshark.com website.  A screen shot

from the Counterfeit Service (Figure A) compared to a screen shot from a previous version of

Escape's Grooveshark.com website (Figure B) is shown below:

*Figure A.  The Counterfeit Service:*



*Figure B.  The original Grooveshark music service:*



8.    Defendants' use of the Grooveshark Marks on or in connection with the Counterfeit Service is likely to cause and has caused actual confusion and mistake by and among consumers and has irrevocably harmed and will continue to harm UMG's rights in and to the Grooveshark Marks.

9.    Defendants have registered the Internet domain name "Grooveshark.im" with a bad-faith intent to profit from the Grooveshark Marks; namely, by tricking consumers into believing that Defendants' Counterfeit Service is the same service as the original Grooveshark service.

10.    Defendants are also engaged in the unauthorized reproduction, distribution, and public performance of Plaintiffs' sound recordings via the Counterfeit Service, on a massive scale.  The harm to Plaintiffs, who invest millions of dollars and enormous creative energies to produce their creative copyrighted works, is manifest and irreparable.

## NATURE OF THE ACTION

11.    This is a civil action seeking equitable relief and damages for counterfeiting, trademark infringement and cybersquatting under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and for copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over the Lanham Act claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. §§ 1116 and 1121.

13.    This Court has jurisdiction over the Copyright Act claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 17 U.S.C. § 502.

14.    Defendants are subject to the jurisdiction of this Court pursuant to N.Y.C.P.L.R. § 302(a)(3)(ii) because (1) they committed numerous tortious acts outside New York, including by infringing the Grooveshark Marks and by reproducing, distributing and performing infringing

copies of Plaintiffs' sound recordings; (2) the causes of action arose from those acts; (3) the

tortious acts caused an injury to Plaintiffs, who maintain either headquarters or offices in New

York; (4) in light of the well-publicized judgments entered by courts in New York, and New

York's status as the hub of the recording industry, Defendants not only expected or should have

reasonably expected their acts to have consequences in New York, but specifically intended to

harm Plaintiffs in New York and to frustrate the provisions set forth in the consent judgments

against the former operators of the Grooveshark service; and (5) upon information and belief,

Defendants have derived substantial revenue from interstate or international commerce.

15.     Defendants are also subject to the jurisdiction of this Court pursuant to Fed. R.

Civ. P. 4(k)(2).  Defendants have targeted their infringing site to a U.S. audience, they have

marketed it to millions of U.S. users, and they have entered into various agreements with third

parties in the U.S. in furtherance of their unlawful activities, including domain name registrars

and Internet Service Providers.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c) and (d) and/or

28 U.S.C. § 1400(a) in that the Defendants are entities or individuals subject to personal

jurisdiction in this District.  Defendants are not, on information and belief, residents of the

United States.

## THE PARTIES

### Plaintiffs

17.     Plaintiffs are in the business of producing, manufacturing, distributing, selling,

licensing, and facilitating the distribution, sale, public performance, and other authorized uses of

sound recordings (*i.e.*, recorded music) in the United States.  The considerable artistic and

technical quality of Plaintiffs' sound recordings is well-known in New York, and throughout the

United States and the world.

18.    Plaintiff Arista Records LLC, is a Delaware limited liability company with its principal place of business in New York, New York.

19.    Plaintiff Atlantic Recording Corporation is a Delaware corporation with its principal place of business in New York, New York.

20.    Plaintiff Capitol Records, LLC is a Delaware limited liability company with its principal place of business in California.  Capitol Records, LLC is registered to do business in New York and maintains an office in New York, New York.

21.    Plaintiff Elektra Entertainment Group Inc. is a Delaware corporation with its principal place of business in New York, New York.

22.    Plaintiff LaFace Records LLC is a Delaware limited liability company with its principal place of business in New York, New York.

23.    Plaintiff Sony Music Entertainment is a Delaware partnership with its principal place of business in New York, New York.

24.    Plaintiff UMG Recordings, Inc. ("UMG") is a Delaware corporation with its principal place of business in Santa Monica, California.  UMG is registered to do business in New York and maintains an office in New York, New York.

25.    Plaintiff Warner Bros. Records Inc. is a Delaware corporation with its principal place of business in Burbank, California.  Warner Bros. Records Inc. is registered to do business in New York and maintains an office in New York, New York.

26.    Plaintiff Warner Music Group Corp. is a Delaware corporation with its principal place of business in New York, New York.

27.    Plaintiff Zomba Recording LLC is a Delaware limited liability company with its principal place of business in New York, New York.

## Plaintiff UMG's Grooveshark Marks and Logo

28.     UMG is the owner by assignment from Escape of the entire right, title and interest in and to, *inter alia*, of the Grooveshark Marks, which are federally-registered trademarks. Information from those registrations, copies of which (as they appear on the U.S. Patent and Trademark Office website) are attached hereto as Exhibit D, is summarized below:

| Registration No. | Trademark | Good and Services |
|---|---|---|
| 4114779 | GROOVESHARK | Entertainment marketing services, namely, marketing, promotion and advertising for recording and performing artists.  Audio broadcasting; Internet radio broadcasting services; broadcasting of audio programming over the Internet.  Entertainment services via the Internet, namely, providing nondownloadable prerecorded music, providing nondownloadable prerecorded music according to consumer preferences, and providing information in the field of music. |
| 4114780 |  | Same as above. |

29.     The registrations listed above are valid, subsisting, unrevoked and uncancelled and UMG is the owner of these marks and all the goodwill associated therewith. *See id.*.

30.     The Grooveshark Marks are well-known and have been widely and extensively used and promoted in interstate commerce on or in connection with the music streaming services offered by Escape.  As such, the public and relevant consumers have come to recognize the Grooveshark Marks as identifying a single source of services (*i.e.,* the Grooveshark service), marks that are now owned by UMG.

## Plaintiffs' Copyrighted Sound Recordings

31.     Plaintiffs are the copyright owners or owners of exclusive rights with respect to the majority of copyrighted sound recordings sold in the United States, including sound recordings containing the performances of some of the most popular and successful recording artists of all time, such as Beyoncé, Bob Marley, Green Day, Justin Timberlake, Kanye West,

Lady Gaga, Michael Jackson, the Red Hot Chili Peppers, Santana, and many more. Plaintiffs have invested and continue to invest significant money, time, effort, and creative talent to create, promote, sell, and license their sound recordings.

32.     Plaintiffs distribute, sell, and/or license their sound recordings in the form of CDs and other tangible media throughout the United States, including in New York. Plaintiffs also sell, distribute, publicly perform, and/or license their sound recordings in the form of digital audio files through legitimate and authorized Internet services, such as iTunes, Amazon, Google Play Music, Rhapsody and Spotify, which are available throughout the United States, including in New York.

33.     Under the Copyright Act, Plaintiffs have the exclusive rights, among other things, to "reproduce the copyrighted work[s]," to "distribute copies or phonorecords of the copyrighted work[s] to the public," to "perform the copyrighted work[s] publicly by means of a digital audio transmission," as well as to authorize or license such activities. 17 U.S.C. § 106.

34.     A non-exhaustive, illustrative list of Plaintiffs' federally copyrighted sound recordings that Defendants have illegally reproduced, distributed and/or caused to be performed to their users is attached hereto as Exhibit E. Each Plaintiff has received Certificates of Copyright Registration from the Register of Copyrights for these copyrighted sound recordings.

**Defendants**

35.     On information and belief, Defendants reside in and operate the Counterfeit Service from Lima, Peru.

36.     Defendants obtained a registration for the domain name "grooveshark.im." The relevant registration record indicates that Defendants registered the "grooveshark.im" domain name through the services of Name.com, a domain name registrar and reseller based in Kirkland, Washington. *See* Exhibit F (registration record for grooveshark.im). The .im domain is

administered by Domicilium (IOM) Limited, a provider of domain name services based in the United Kingdom (Isle of Man), with an office in this district.

37.     The registration record for grooveshark.im lists Defendant "Cesar Chavez" as the Domain Owner, Administrative Contact and Technical Contact with an address in the city of Lima, Peru.  Exhibit F.

38.     Does 1-10 are individuals who, along with Cesar Chavez, own and/or operate the Counterfeit Service, but whose identities and addresses are currently unknown to Plaintiffs.

**The Counterfeit Service**

39.     Defendants launched their Counterfeit Service sometime after the shutdown of the original Grooveshark service.  In an attempt to create confusion and pass off their service as the same service previously offered under the Grooveshark Marks, the Counterfeit Service prominently features counterfeit copies of the Grooveshark Marks and bears the same graphic designs and overall appearance and colors as an earlier version of the Grooveshark.com website operated by Escape.  *See supra* at ¶ 8.

40.     In a further attempt to mislead the public, Defendants maintain a Facebook page on which they promote grooveshark.im as the rebirth of the original Grooveshark service, using the Grooveshark Marks to direct users to the grooveshark.im site.  *See* Exhibit G.

41.     These efforts have succeeded in causing actual confusion among Internet users. A selection of recent posts from Defendants' Facebook page shows that users have been misled into believing that the original Grooveshark has been revived, yielding expressions of gratitude for the supposedly revived service such as "i'm happy u guys are back," "love that GS is back up," "[t]hank you for bringing back Grooveshark!" *See* Exhibit G.

## Functionality of the Counterfeit Service

42.    The Counterfeit Service makes available to its users a vast number of MP3 music files (a popular format for digital music files).  Users who visit the Counterfeit Service can locate these MP3 files with a search box that is prominently displayed to the user.  Most, if not all, of the accessible files are typically copyrighted sound recordings.

43.    After a user enters a search query, the Counterfeit Service directs users to search result pages that contain a series of icons next to the search results, including a "download" icon, which enables users to download a copy of the MP3 file, and a "play" icon, which enables user to play the song in a small in-page player.

44.    The Counterfeit Service's selection of songs is vast and contains an enormous number of Plaintiffs' copyrighted works.  With only a few keystrokes, users can quickly and easily find, and then reproduce or perform, full-length infringing copies of legendary sound recordings like Michael Jackson's "Billie Jean," Green Day's "American Idiot," and Lady Gaga's "Born This Way," to name just a few.

45.    As a direct result of Defendants' widespread and brazen infringement of the Grooveshark Marks and Plaintiffs' copyrighted works, the Counterfeit Service threatens to pick up where Escape's original Grooveshark service left off.  Escape's service was one of the most popular music streaming sites on the Internet, attracting up to 35 million monthly users during its nine years of operation and generating significant revenue.

46.    Although largely unnoticed until recently, media reports from the past two weeks indicate that the Counterfeit Service is "growing fast" in popularity, noting that "the site is now breaking into the top 30,000 sites" in the United States, "with grooveshark.im about to become a *top 10,000 site in Brazil.*"  Exhibit  H.  Independent studies estimate that the Counterfeit Service has attracted roughly 400,000 unique visitors over the past 30 days. *See* Exhibit I

(estimates of Grooveshark.im's user traffic from TrafficEstimate.com, Similarweb.com and Siteanalytics.compete.com).

47.    As another indicator of the growing popularity of the Counterfeit Service, Grooveshark.io is now the top search return on both Google and Bing in response to a query for "Grooveshark." Exhibit J (Google and Bing results).

48.    This growing popularity of the Counterfeit Service will enable Defendants to enrich themselves at the expense of copyright owners, like Plaintiffs, whose sound recordings are pirated on an immense scale on the Counterfeit Service on a daily basis.

## COUNT ONE

## TRADEMARK COUNTERFEITING AND INFRINGEMENT
### 15 U.S.C. § 1114
### (On Behalf of Plaintiff UMG)

49.    UMG repeats and realleges every allegation contained in paragraphs 1 through 48 as if fully set forth herein.

50.    The Grooveshark Marks are valuable and distinctive.  Moreover, the Grooveshark Marks are valid and protectable, *see* Exhibit D, and UMG is the owner of these marks and all the goodwill associated therewith.

51.    Defendants are using counterfeit copies and confusingly similar imitations of the Grooveshark Marks in commerce in connection with the promotion, advertisement and operation of the Counterfeit Service and their music download and streaming service.  Moreover, Defendants have intentionally sought to mislead consumers by falsely promoting their service as the real "Grooveshark" service.

52.    Defendants' use of counterfeit copies and confusingly similar imitations of the Grooveshark Marks is likely to cause and has caused actual confusion, mistake and deception

among the relevant consumers and as to the source, sponsorship or affiliation of the services provided by Defendants via their Counterfeit Service.

53.     Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable and irreparable harm to UMG.

54.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the Grooveshark Marks in violation of UMG's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

55.     UMG has no adequate remedy at law and, if Defendants' activities are not preliminarily and permanently enjoined, UMG will continue to suffer irreparable harm and injury.

## COUNT TWO

### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### 15 U.S.C. §1125(a)

#### (On Behalf of Plaintiff UMG)

56.     UMG repeats and realleges every allegation contained in paragraphs 1 through 55 as if fully set forth herein.

57.     Defendants' Counterfeit Service features counterfeit copies of UMG's Grooveshark Marks and is otherwise highly similar in appearance to the former Grooveshark website.  Accordingly, Defendants' activities are likely to cause and have caused actual confusion among consumers as to the origin or sponsorship of Defendants' service.

58.     By misappropriating and using UMG's Grooveshark Marks, Defendants misrepresent and falsely describe to the general public the origin and source of their service and create a likelihood of confusion by consumers as to the source of such service.

59.     Defendants' infringing acts, as described above, are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1 125(a), in that Defendants' use of the Grooveshark Marks in

connection with their Counterfeit Service in commerce constitutes a false designation of origin and unfair competition.

60.     UMG has no adequate remedy at law and, if Defendants' activities are not preliminarily and permanently enjoined, UMG will continue to suffer irreparable harm and injury.

## COUNT THREE

### CYBERSQUATTING UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT 15 U.S.C. §1125(d)

#### (On Behalf of Plaintiff UMG)

61.     UMG repeats and realleges every allegation contained in paragraphs 1 through 60 as if fully set forth herein.

62.     The domain name "grooveshark.im" is identical or confusingly similar to UMG's registered "Grooveshark" word mark, which was distinctive and/or famous at the time Defendants registered the domain name.

63.     Defendants have acted with a bad-faith intent to profit from the "Grooveshark" word mark and the goodwill associated with it by registering and using the domain name grooveshark.im.

64.     Defendants' activities as alleged herein violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(l).

65.     UMG has no adequate remedy at law and, if Defendants' activities are not preliminarily and permanently enjoined, UMG will continue to suffer irreparable harm and injury.

## COUNT FOUR

### DIRECT COPYRIGHT INFRINGEMENT
### (On Behalf of All Plaintiffs)

66.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 65 as if fully set forth herein.

67.     Defendants, without permission or consent of Plaintiffs, reproduce and distribute unauthorized reproductions of Plaintiffs' copyrighted sound recordings, and engage in unauthorized public performances of copyrighted sound recordings, including but not limited to those copyrighted sound recordings listed in Exhibit E hereto.  Such reproduction, distribution, and public performance constitutes infringement of Plaintiffs' registered copyrights and the exclusive rights under copyright in violation of 17 U.S.C. § 106(1), (3) and (6).

68.     The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

69.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

70.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial.

71.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

72.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in

15

money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary injunction and a permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

### COUNT FIVE

### SECONDARY COPYRIGHT INFRINGEMENT
### (On Behalf of All Plaintiffs)

73.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 72 as if fully set forth herein.

74.    As detailed above, users of the Counterfeit Service are engaged in repeated and pervasive infringement of Plaintiffs' exclusive rights by downloading copies of MP3 files for Plaintiffs' copyrighted works to their personal computers or other devices from the Counterfeit Service.

75.    Defendants are liable under the Copyright Act for inducing these infringing acts of the users of the Counterfeit Service.  Defendants operate the Counterfeit Service with the object of promoting its use to infringe Plaintiffs' copyrights.

76.    Defendants knowingly and intentionally induce, entice, persuade, and cause users of the Counterfeit Service to infringe Plaintiffs' copyrights in their sound recordings, including but not limited to those sound recordings listed in Exhibit E hereto, in violation of Plaintiffs' copyrights.  Among other things, Defendants provide prominent download buttons adjacent to the search results that allow users to create permanent, unauthorized copies of infringing music with ease.

77.    Through these activities, among others, Defendants knowingly and intentionally take steps that are substantially certain to result in direct infringement of Plaintiffs' sound recordings, including but not limited to those sound recordings listed in Exhibit E hereto, in violation of Plaintiffs' copyrights.

78.    Despite their knowledge that infringing material is made available to users by means of the Counterfeit Service, Defendants have failed to take reasonable steps to minimize the infringing capabilities of the website.

79.    Defendants are liable as contributory copyright infringers for the infringing acts of users of the Counterfeit Service.  Defendants have actual and constructive knowledge of this infringing activity.  Defendants knowingly cause and otherwise materially contribute to these unauthorized reproductions of Plaintiffs' copyrighted sound recordings, including but not limited to those sound recordings listed in Exhibit E hereto.

80.    Defendants are vicariously liable for the infringing acts of users of the Counterfeit Service.  Defendants have the right and ability to supervise and control the infringing activities that occur through the use of their website, and at all relevant times have derived a direct financial benefit from the infringement of Plaintiffs' copyrights.  Defendants have refused to take any meaningful action to prevent the widespread infringement by its users.  Defendants are therefore vicariously liable for the unauthorized reproduction of Plaintiffs' copyrighted sound recordings by their users, including but not limited to those sound recordings listed in Exhibit E hereto.

81.    The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

82.    Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

83.    As a direct and proximate result of Defendants' infringement of Plaintiff copyrights and exclusive rights under copyright, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work

infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial.

84.   Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

85.   Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary injunction and a permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.   For a declaration that:

    a.   Defendants' activities as alleged herein constitute counterfeiting and infringement of the Grooveshark Marks in violation of UMG's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114;

    b.   Defendants' activities as alleged herein violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because Defendants' use of the Grooveshark Marks in connection with their Counterfeit Service in commerce constitutes a false designation of origin and unfair competition;

    c.   Defendants' activities as alleged herein violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(l); and

    d.   Defendants, both directly and secondarily, willfully infringe Plaintiffs' copyrights;

2.      For such equitable relief under Titles 15 and 28, and this Court's inherent equitable powers, as is necessary to prevent or restrain infringement of the Grooveshark Marks, including preliminary and permanent injunctions prohibiting Defendants and their officers, agents, servants, employees, attorneys, and others in active concert or participation with each or any of them:

      a.   from using the Grooveshark Marks in any manner in connection with the advertising, offering for sale, or sale of any service or product, not provided by or authorized by Plaintiff UMG;

      b.   from committing any acts calculated to cause purchasers to believe that Defendants' services are those offered under the control and supervision of UMG, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of UMG;

      c.   from further infringing any of the Grooveshark Marks and damaging UMG's goodwill;

      d.   from otherwise competing unfairly with UMG in any manner; and

      e.   from using, linking to, transferring, selling, owning, or otherwise exercising control over the domain name grooveshark.im or any other domain name that incorporates, in whole or in part, any of the Grooveshark Marks or through which Defendants infringe Plaintiffs' intellectual property rights (the "Infringing Domain Names"); and

requiring Defendants and their officers, agents, servants, employees, attorneys, and others in active concert or participation with each or any of them to surrender the Infringing Domain Names.

3.      For entry of an Order requiring Defendants, within thirty (30) days after service of judgment with notice of entry thereof upon it, to file with the Court and serve upon UMG a written report under oath setting forth in detail the manner in which Defendants have complied with paragraph 2, a through e, *supra*.

4.      For entry of an Order requiring that either:  (a) Defendants account for and pay over to UMG all profits realized by Defendants by reason of Defendants' unlawful acts in violation of the Lanham Act herein alleged, and that the amount of damages for infringement of the Grooveshark Marks be increased by a sum not exceeding three times the amount thereof as provided by law, or (b) UMG be awarded statutory damages of $2,000,000 for each and every one of the Grooveshark Marks willfully counterfeited by each Defendant and $250,000 per infringing domain name for Defendants' willful counterfeiting and cybersquatting of the Grooveshark Marks.

5.      For such equitable relief under Titles 17 and 28, and this Court's inherent equitable powers, as is necessary to prevent or restrain infringement of Plaintiffs' copyrights, including preliminary and permanent injunctions requiring Defendants and their officers, agents, servants, employees, attorneys, and others in active concert or participation with each or any of them to:

    a.      cease infringing, or causing, enabling, facilitating, encouraging, promoting and inducing or participating in the infringement of, any of Plaintiffs' copyrights, including but not limited to the copyrights in sound recordings listed in Exhibit E; and

    b.      surrender, and cease to use, the Infringing Domain Names.

6.    For entry of an Order, pursuant to Section 34 of the Lanham Act, Section 502 of the Copyright Act (17 U.S.C. § 502), The All Writs Act (28 U.S.C. § 1651(a)), and this Court's inherent equitable powers,

    a.    enjoining Defendants and all third parties in active concert or participation with each or any of them from supporting or facilitating access to any or all domain names, URLs and websites (including, without limitation, the Infringing Domain Names) through which Defendants infringe the Grooveshark Marks or Plaintiffs' copyrights;

    b.    requiring domain name registries and/or registrars (including Name.com and Domicilium Limited) holding or listing the Infringing Domain Names to:  (a) disable grooveshark.im and any substantially identical websites and/or domain names operated or controlled by Defendants (including the Infringing Domain Names) through a registry hold, nameserver redirection or otherwise, and to make them inactive and non-transferable to anyone other than Plaintiffs, and (b) transfer the Infringing Domain Names to a registrar to be appointed by Plaintiffs to re-register the domain names in Plaintiffs' names and under Plaintiffs' ownership; and

    c.    enjoining all third parties in active concert or participation with Defendants from maintaining, operating, or providing advertising, financial, technical or other support to Defendants and any other domain names, URLs or websites through which Defendants infringe the Grooveshark Marks or Plaintiffs' copyrights, including without limitation the Infringing Domain Names.

7.    For statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 per infringed work, arising from Defendants' willful violations of Plaintiffs' rights under the

Copyright Act or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b),

Plaintiffs' actual damages, including Defendants' profits from infringement, in amounts to be

proven at trial.

      8.      For an accounting, the imposition of a constructive trust, restitution of

Defendants' unlawful proceeds from copyright infringement, and damages according to proof.

      9.      For Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. §

505, Sections 34-39 of the 1946 Trademark Act and otherwise.

      10.      For prejudgment and post-judgment interest; and

      11.      For such other relief as the Court may deem just and proper.

DATED:  New York, NY
           February X, 2016

Respectfully submitted,

JENNER & BLOCK LLP

By:

Kenneth L. Doroshow (KD-8374)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone:  (202) 639-6027
Facsimile:  (202) 639-6066

Lindsay W. Bowen (LB-8510)
919 Third Avenue
39th Floor
New York, NY 10022
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699

*Attorneys for Plaintiffs*